**Burl F. PARSONS**

v.

**The UNITED STATES.**

No. 357–80C.

United States Court of Claims.

Jan. 27, 1982.

Walter G. Metcalfe, Cayce, S. C., for plaintiff.

Stephanie Wickouski, with whom was Acting Asst. Atty. Gen. Thomas S. Martin, Washington, D. C., for defendant.

Before DAVIS, Judge, SKELTON, Senior Judge, and KASHIWA, Judge.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

SKELTON, Senior Judge:

This case comes before the court on cross-motions for summary judgment. The plaintiff, Burl F. Parsons, is the widow of Lieutenant Colonel Clyde C. Parsons, USAF (Ret.). She seeks the recovery of annuity benefits since August 22, 1973, under the Retired Serviceman's Family Protection Plan (RSFPP, or the plan, formerly titled the Uniformed Services Contingency Option Act or USCOA), 10 U.S.C. §§ 1431–1446. The facts are briefly as follows.

On November 12, 1957, while plaintiff's husband, Major Clyde C. Parsons (Parsons), was serving on active duty in the United States Air Force, he made an election under the USCOA to participate in a plan which would give him a reduced annuity upon his retirement so as to allow a continuing annuity to his widow upon his death. Parsons retired from the Air Force with the rank of lieutenant colonel on June 30, 1962. He received retired pay according to applicable statutes and regulations from that date until his death on August 22, 1973.

Prior to his retirement, Parsons filed an application on November 8, 1961, seeking to revoke his previous election to participate in the RSFPP. At that time the election to receive a reduced annuity to permit a continuing annuity to a surviving spouse was irrevocable under the statute, and, therefore, his application was denied. On August 13, 1968, the RSFPP was amended by Section 1(6) of Public Law 90–485, 82 Stat. 751, 10 U.S.C. § 1436(b), to permit a retired member to revoke a prior election and to withdraw from the reduced annuity program if he desired to do so.

The records of the Air Force Accounting and Finance Center reflect that on September 27, 1971, the Secretary of the Air Force approved a recommendation that a request of Parsons to withdraw from participation in the RSFPP be granted, such approval to be effective February 1, 1972. The actual written request of Parsons to withdraw from the RSFPP in 1971 cannot be located, although the Air Force produced his withdrawal application of 1961. The record shows that the 1971 application was routinely destroyed along with other papers by the Air Force in 1973.

A statement of Lt. Col. Jerry L. Walker, the Director of the Directorate of Retired Pay Operations, Air Force Accounting and Finance Center (AFAFC) in Denver, Colorado, who was the custodian of the retired pay files of all retired Air Force members including the file of Parsons, was introduced into evidence. This statement shows that Parsons was notified of the approval by the Secretary of the Air Force of his request for withdrawal from the RSFPP and the consequent adjustment of his pay account eliminating the RSFPP deduction, and that his pay records do not reflect the receipt of any comment or objection from Parsons regarding such action.

The written approval of the Secretary of the Air Force of Parsons' application to withdraw from the plan was introduced into evidence. It is dated September 27, 1971, to be effective February 1, 1972. The record shows further that in January, 1972, before the effective date of Parsons' withdrawal from RSFPP, he received gross pay of $608.40 per month from which was deducted $50.43 for the RSFPP. The next pay statement introduced as an exhibit and dated February 29, 1972, after the effective date of his withdrawal from the plan, shows that his retired pay was increased by $50.43, which was the amount previously deducted for the RSFPP. He received payments containing such increase for eighteen months between the time of his withdrawal from the plan and his death on August 22, 1973. During this eighteen month period, Parsons never questioned the action of the Air Force nor objected to the adjustment in his pay check.

Also, on October 1, 1971, the AFAFC received a letter from the Secretary of the

Air Force advising that office of his approval of Parsons' request to withdraw from participation in the program and directing the AFAFC to change his records accordingly. On February 1, 1972, the AFAFC terminated deductions for coverage under RSFPP from Parsons' retired pay and restored his full pay.

In response to inquiries made by plaintiff about her failure to receive survivor's annuity benefits, she was told by the Air Force in February, 1974, that Parsons did not elect to participate in the Plan. Plaintiff sought the assistance of her congressman, who was informed by the Air Force that Parsons' request to withdraw from participation in the RSFPP was approved by the Secretary on September 27, 1971, effective February 1, 1972. This suit to recover such annuity benefits in the sum of $18,516, together with interest and attorney fees, was filed by plaintiff on July 10, 1980. We hold for the defendant.

The issue we must decide in this case is whether or not Parsons withdrew from participation in the RSFPP prior to the time of his death. It is clear that after 10 U.S.C. §§ 1431–1446 was amended in 1968, Parsons had the right to withdraw from the plan if he desired to do so. Pertinent parts of 10 U.S.C. § 1436 allowing such withdrawal are as follows:

(b) Under regulations prescribed under section 1444(a) of this title, the Secretary concerned may, upon application by the retired member, allow the member—. . .

(2) to withdraw from participation in an annuity program under this title; or

. . .

A retired member may not reduce an annuity under clause (1) of this subsection, or withdraw under clause (2) of this subsection, earlier than the first day of the seventh calendar month beginning after he applies for reduction or withdrawal . . .

No amounts by which a member's retired or retainer pay is reduced prior to the effective date of a reduction of annuity, withdrawal, change of election, or election under this subsection may be refunded to, or credited on behalf of, the member by virtue of an application made by him under this subsection.

The plaintiff contends that Parsons never withdrew from the plan, but she has not produced any evidence supporting such contention. She points to the failure of the Air Force to produce Parsons' written request to withdraw as indicating that he was a participant in the plan at the time of his death. However, this is an attack on the sufficiency of the government's evidence rather than affirmative evidence supporting her claim. The Air Force accounted for the absence of Parsons' written request by showing that it was routinely destroyed after a lapse of time in accordance with its usual practice and custom. Even if the request had been produced, it would have been only cumulative of other government evidence showing Parsons' withdrawal from the plan.

The plaintiff says that she believes that her husband would not have withdrawn from the plan without telling her, and that she feels that he would never have done anything to hurt her and their children. While we can appreciate her faith and confidence in her husband, this is not evidence that proves anything in this case, and is nothing more than a conclusion on her part.

Of course, the government contends that Parsons did withdraw from the plan, and it has submitted convincing and substantial evidence, as fully discussed above, in support of its contention. It is not necessary to repeat the evidence here.

It is well established that there is a presumption that public officers perform their duties correctly, fairly, in good faith, and in accordance with law and governing regulations, and the burden is on the plaintiff to prove otherwise. *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131, 142–143 (1926); *Brooks v. United States,* 213 Ct.Cl. 115, 121 (1977); *Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 746, 572 F.2d 786, 805 (1978); and *Sanders v. United States,* 219 Ct.Cl. 285, 301–02, 594 F.2d 804, 813 (1979),

and cases cited. This presumption is applicable in the instant case to the acts of the Secretary in approving Parsons' request for withdrawal and in notifying the AFAFC of his action, and in directing the AFAFC to correct his records. The presumption also applies to the acts of the AFAFC in notifying Parsons of the Secretary's approval, and in eliminating $50.43 from Parsons' monthly pay check as a deduction for participating in the plan and restoring full pay to him for 18 months thereafter until his death. This presumption stands unrebutted by the plaintiff in this record.

Accordingly, we hold that Parsons withdrew from the RSFPP on September 27, 1971, by written request which was approved by the Secretary of the Air Force on the same day, effective February 1, 1972, and that by reason thereof he was not a participant in the plan at the time of his death, and the plaintiff is not entitled to recover.

In view of our disposition of the case, we do not reach the questions of limitations and laches raised by the defendant.

The plaintiff's motion for summary judgment is denied and that of the defendant is granted, and plaintiff's petition is dismissed.[1]

---

1. The following motions of plaintiff are denied: (1) Motion to strike certain defenses of defendant and (2) Motion for production, inspection, and copying of various documents and statements.