# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 02-2384

ORLAND R. MARSH, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided   November 17, 2005   )

*Michael R. Dowling*, of Ashland, Kentucky, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Joan E. Moriarty*, Deputy Assistant General Counsel; and *Debra L. Bernal*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and KASOLD and SCHOELEN, *Judge*s.

SCHOELEN, *Judge*:  The appellant, Orland R. Marsh, through counsel, seeks review of an August 23, 2002, Board of Veterans' Appeals (Board or BVA) decision that determined that he had failed to submit a timely Notice of Disagreement (NOD) as to a VA regional office's (RO's) March 1994 denial of his service-connection claims.  Record (R.) at 1-9.  The appellant and the Secretary both filed a brief.  This appeal is timely, and the Court has jurisdiction over the case pursuant to 38 U.S.C. §§ 7252(a) and 7266.  For the reasons that follow, the Court will reverse the August 2002 Board decision and remand the matter for further proceedings consistent with this opinion.

## I.  BACKGROUND

The appellant served on active duty in the U.S. Air Force from June 1987 to April 1988.  R. at 13.  In October 1993, the appellant filed claims for service connection for a back disability and

post-traumatic stress disorder (PTSD). R. at 102-05. In March 1994, the RO denied the claims. R. at 16-19. In a letter dated April 7, 1994, the RO notified the appellant of the adverse decision. R. at 21. In November 1994, attorney Michael R. Dowling submitted a VA "Appointment of Representative" form notifying the RO that he represented the appellant. R. at 25. On April 19, 1995, the RO received an NOD dated April 3, 1995. Supplemental R. at 1-2. The NOD stated that the appellant "disagree[d] with the decision denying service[-]connected benefits for a back injury and denying service connection for Post[-]Traumatic Stress Disorder" and requested the RO to issue a Statement of the Case (SOC). R. at 1.

In August 1995, the RO issued an SOC identifying the issues on appeal as entitlement to service connection for PTSD and a back disability. R. at 32. In the SOC, the RO stated that the appellant was notified of the March 1994 rating decision on April 7, 1994, and that an NOD was received on April 19, 1995. R. at 33. No jurisdictional deficiency was noted in the SOC. The RO received the appellant's Substantive Appeal on September 5, 1995. R. at 41-43.

The Board raised, for the first time, the matter of the timeliness of the NOD in its September 16, 1997, decision and dismissed the appeal. The Board concluded that the appellant had not submitted a timely NOD as to the March 1994 RO denial of his service-connection claims. R. at 75-79. The Board noted that the postmark was not in the claims file. R. at 79. Shortly afterward, the appellant filed a motion for reconsideration of the Board decision. R. at 84-85. Attached to the motion was a September 1997 affidavit from Judy G. Meyers, secretary to the appellant's counsel, describing the office's mailing practice. R. at 86. She attested that "[i]n the normal course of business, all mail is delivered to the Post Office on a daily basis making the date of any letter the date on which the letter would be postmarked." *Id.* In his motion, the appellant argued, inter alia, that the presumption of regularity applied to the manner in which the RO issued the SOC on the merits of the appellant's underlying claims. R. at 84-85. On January 30, 1998, the Board denied the motion for reconsideration. R. at 133-34.

The appellant appealed the September 1997 Board decision to this Court. On appeal, the appellant again raised the presumption of regularity. He argued:

> There is a presumption of regularity . . . . The record in this case was certified and transmitted thereby indicating that the appeal was properly taken . . . . The [RO] did not raise or assign as error the failure of the [v]eteran to timely file the appeal . . . .

2

The presumption of 38 C.F.R. § 20.305 should not be given effect by virtue of the presumption of regularity. The [RO] had the postmark of the NOD in its possession, allowed the appeal to go forward, and in accordance with established procedures, mailed the [SOC] to the [v]eteran and initiated the appeal process.

R. at 138-39. In October 1998, the Court remanded the case because the Court concluded that the Board had violated *Sutton v. Brown*, 9 Vet.App. 553, 564-70 (1996), and *Bernard v. Brown*, 4 Vet.App. 384, 390-91 (1993), by failing to address whether the Board's sua sponte consideration of the question of the timeliness of the appellant's NOD, without first according the appellant an opportunity to submit evidence or argument on that question, was prejudicial. *Marsh v. West*, 11 Vet.App. 468, 470 (1998).

The Board subsequently remanded the case for the RO to determine whether the appellant filed a timely NOD with respect to the March 1994 rating decision. R. at 153. In July 1999, the RO concluded that, because there was no postmark date, there was no evidence that the appellant's NOD was received within the one-year appeal period. Therefore, the RO concluded that the NOD was untimely. R. at 171. In August 1999, the appellant filed an NOD challenging the July 1999 decision. R. at 174-77. The appellant again argued, inter alia, that VA had not applied the presumption of regularity. *Id.* He also referred to the September 1997 affidavit from counsel's secretary to support his argument that the NOD was timely filed. *Id.* In December 1999, the Board again determined that the appellant did not submit a timely NOD as to the RO's March 1994 rating decision, and dismissed the appeal for lack of jurisdiction. R. at 184-90. Following an appeal, the Court, in December 2001, vacated the December 1999 Board decision and remanded the matter, in part, because the Court concluded that the Board had erred in making its timeliness determination without considering the September 1997 affidavit from the appellant's counsel's secretary regarding the mailing practices in the counsel's office. R. at 225-29. *Marsh v. Principi*, No. 00-686, 2001 U.S. Vet. App. LEXIS 1303 (Nov. 19, 2001).

On August 23, 2002, the Board issued the decision now on appeal, again determining that it had no jurisdiction over the appellant's appeal because he failed to file a timely NOD as to the March 1994 RO decision. R. at 1-10. The Board discussed the requirement that an NOD must be filed within one year from the date of notification of a decision on a claim, the regulatory provisions

3

regarding acceptance of a postmark as evidence of timely filing, and the five-day mailing presumption in the absence of a postmark. R. at 7 (citing 38 U.S.C. § 7105 and 38 C.F.R. §§ 3.160, 3.302, 3.305, 20.200 (2005)). After reviewing the evidence before it, the Board concluded that the RO had received the NOD on April 19, 1995, more than one year after the RO notification of the denial of the appellant's claims on April 3, 1994. R. at 8. The Board found that the record did not include a U.S. Postal Service postmark for the NOD, and that "there is no legal authority for accepting a substitute document (here the affidavit) as constituting evidence of a postmark in the absence of the actual postmark." *Id*. With regard to the appellant's arguments concerning the presumption of regularity, the Board stated that this argument is "without legal merit." R. at 9.

## II. LAW

### A. Requirements of an NOD

Appellate review of an RO decision is initiated by an NOD and completed by a Substantive Appeal (VA Form 1-9, Appeal to Board of Veterans' Appeals) after an SOC is issued by VA. 38 U.S.C. § 7105(a); *see Roy v. Brown*, 5 Vet.App. 554, 555 (1993); 38 C.F.R. § 20.200 (2005). There are content and time requirements for the filing of an NOD. An NOD must be "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the [RO] and a desire to contest the result." 38 C.F.R. § 20.201 (2005). An NOD must be written "in terms which can be reasonably construed as disagreement with that determination and a desire for appellate review." *Id.* If the adjudicative determination involves more than one issue, the NOD must be sufficiently specific to identify the specific determination with which the appellant disagrees. *Id*.

The NOD must be filed by the appellant or a representative within one year "from the date of mailing of notice of the result of initial review or determination." 38 U.S.C. § 7105(b)(1); *see* 38 C.F.R. § 20.302(a) (2005) ("The date of mailing the letter of notification of the determination will be presumed to be the same as the date of that letter for purposes of determining whether an appeal has been timely filed."). An NOD postmarked before the expiration of the one-year period will be accepted as timely. 38 U.S.C. § 7105(b)(1). If the postmark is unavailable, it is presumed that any written document required to be "filed within a specified period of time,"

4

which includes an NOD, was mailed five days prior to the actual receipt of the document by the RO, excluding Saturdays, Sundays, and legal holidays. *See* 38 C.F.R. § 20.305(a), (b) (2005).

If an NOD is not filed within the one-year time limit, the RO decision becomes final. 38 U.S.C. § 7105(c); *see Rowell v. Principi,* 4 Vet.App. 9, 17 (1993). A failure to file a timely NOD deprives the Board of jurisdiction to consider the merits of an appeal. *See* 38 U.S.C. § 7105(c); *Garlejo v. Brown*, 10 Vet.App. 229, 232 (1997). The Board has an obligation to ensure that it has jurisdiction over each case before it. *See Marsh v. West*, 11 Vet.App. at 469; 38 C.F.R. § 20.101(c), (d) (2005). Accordingly, the Board has authority to assess its own jurisdiction. *See Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996) ("[I]t is well-established judicial doctrine that any statutory tribunal must ensure that it has jurisdiction over each case before adjudicating the merits . . . . ").

Whenever a claimant protests an adverse determination with regard to the timeliness of an NOD, the appropriate action is for the RO to issue an SOC on this issue. *See* 38 C.F.R. § 19.34. An RO determination that an NOD has not been timely filed is an appealable issue. *See* 38 C.F.R.§ 20.101(c) (2005) ("All claimants have the right to appeal a determination made by the agency of original jurisdiction that the Board does not have jurisdictional authority to review a particular issue."); 38 C.F.R. § 19.34 (2005) (providing that "whether a[n NOD] . . . has been filed on time is an appealable issue"); *see also* 38 U.S.C. § 7104(a) (providing that "all questions in a matter . . . subject to a decision by the Secretary shall be subject to one review on appeal to the . . . Board").

The Board's determinations regarding notification and whether an appellant filed a timely NOD are factual matters that the Court reviews under the "clearly erroneous" standard of review. *Mindenhall v. Brown*, 7 Vet.App. 271, 274 (1994). Under this standard of review, a Board finding of fact may not be reversed unless the Court, in reviewing all the evidence of record, "'is left with the definite and firm conviction that a mistake has been committed.'" *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U. S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). When applying this standard, "'if the [Board's] account of the evidence is plausible in light of the record viewed in its entirety, the [Court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Gilbert*, *supra* (quoting

5

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)); *see also Mariano v. Principi*, 17 Vet.App. 305, 313 (2003) (applying "clearly erroneous" standard to assess, as directed by 38 U.S.C. § 7261(b)(1), Board's application of 38 U.S.C. § 5107(b) "equipoise standard").

## B. The Presumption of Regularity

There is a presumption of regularity that public officers perform their duties "'correctly, fairly, in good faith, and in accordance with law and governing regulations.'" *Ala. Airlines, Inc. v. Johnson,* 8 F.3d 791, 795 (Fed. Cir. 1993) (quoting *Parsons v. United States*, 670 F.2d 164, 166 (Ct. Cl. 1982)). In applying the presumption of regularity, courts presume that, in the absence of clear evidence to the contrary, public officials have properly discharged their official duties. *See Ashley v. Derwinski*, 2 Vet.App. 62, 64-65 (1992); *see also Davis v. Brown*, 7 Vet.App. 298, 300 (1994); *Saylock v. Derwinski*, 3 Vet.App. 394, 395 (1992).

This Court has applied the presumption of regularity to processes and procedures throughout the VA administrative process. *See*, *e.g.*, *Crain v. Principi,* 17 Vet.App. 182, 186 (2003) (applying the presumption of regularity to RO's mailing of an SOC to a veteran); *Redding v. West*, 13 Vet.App. 512, 515 (2000) (applying the presumption of regularity as to whether RO received the veteran's power of attorney); *Baldwin v. West*, 13 Vet.App. 1, 5-6 (1999) (applying the presumption of regularity as to whether RO examined and considered service medical records); *Schoolman v. West*, 12 Vet.App. 307, 310 (1999) (applying the presumption of regularity as to whether RO sent to claimant the application form for dependency and indemnity compensation); *Davis*, 7 Vet.App. at 300 (applying the presumption of regularity to the BVA's mailing of a copy of a BVA decision to a veteran); *Mindenhall,* 7 Vet.App. at 274 (applying the presumption of regularity to a RO's mailing of a VA decision to a veteran).

Although the presumption of regularity "usually runs in favor of the government, it is equally applicable and appropriately applied in favor" of individuals who are litigating against the Government. *Ala. Airlines*, 8 F.3d at 796 (holding that the presumption of administrative regularity ran in the airline's favor where the airline challenged Government's postpayment audits of airline transportation bills). Indeed, this Court has applied the presumption of regularity so as to benefit an appellant. In *Woods v. Gober,* 14 Vet.App. 214, 218 (2000), the appellant argued that he was entitled to an effective date earlier than 1989 for an award of service connection for PTSD

because he had not received notice of a 1985 RO denial of service connection.

The Secretary in *Woods* argued that under the presumption of regularity of mailing of RO decisions, VA was presumed to have mailed a copy of the February 1985 RO decision to the appellant at his last-known address. *See Woods*, 14 Vet.App. at 221. The Court held that the presumption of regularity applied to two VA actions: (1) The RO's mailing of the February 11, 1985, RO decision; and (2) a VA Medical Center's (VAMC's) photocopying and transmitting to the RO in 1985 a January 1985 VAMC medical record that contained an address different from the one the RO had on file when it mailed the February 1985 RO decision to the veteran. *Id*. at 220. The Court then held that the presumption of regularity that applied to the RO's mailing of the February 1985 RO decision was rebutted when that mail was returned to VA as undeliverable. *Id*. Accordingly, the burden of proof shifted to VA to establish that it had discharged its duty to notify the veteran of the February 1985 decision. *Id*. Furthermore, the Court held that VA failed to sustain this burden because the January 1985 VAMC medical record that was transmitted to the RO in 1985 contained an address to which the RO could have mailed the February 1985 RO decision, an address that was different from the address to which the RO had mailed the February 1985 decision, which was returned to VA as undeliverable. *Id*.

The Court in *Woods* arrived at this conclusion even though the record on appeal (ROA) contained two copies of the January 1985 medical record: A copy received by the RO in 1985 that did not show any mailing address for the veteran; and a copy received by the RO in 1989 that did show the veteran's new mailing address. The Court held that the application of the presumption of regularity to the VAMC's transmittal of the January 1985 medical record to the RO in 1985 "serves to show that the 1985 and 1989 copies are copies of the same document and that the contents of each are the same, including the showing of the 1985 address." *Id*. It concluded that the discrepancy in the ROA between the two copies of the January 1985 medical record "reflect[ed] only a problem in copying that document for purposes of creating the ROA, and that such absence [of the mailing address] certainly is not sufficient to rebut this second application of the presumption as to the address being a part of the 1985 copy." *Id*. Consequently, the effect of the application of the presumption of regularity of the VAMC 's photocopying of the VAMC medical records led the Court to hold that the Secretary did not properly notify the veteran of its

February 1985 RO decision. *Id*.

### III. ANALYSIS

A. Presumption of Regularity as Applied to the RO's August 1995 SOC

The Court holds that the presumption of regularity applies to the RO's issuance of the August 1995 SOC addressing the merits of the appellant's underlying claims. The RO followed the procedures established by VA for when a timely NOD is filed and not those procedures that the RO is required to follow when an NOD is filed out of time. Accordingly, for the reasons stated below, we reverse the BVA's conclusion that the presumption of regularity did not apply to the RO's issuance of the statement of the case on the merits of the underlying claims. Whether the presumption of regularity attaches to the public actions of a public official is a question of law that the Court reviews de novo. 38 U.S.C. § 7261(a)(1); *see Smith v. Gober*, 14 Vet.App. 227, 230 (2000) (stating that the Court reviews questions of law de novo without any deference to the Board's conclusions).

The August 1995 SOC identified the issues on appeal as involving service connection for a back disorder and PTSD – issues identified in the appellant's NOD. R. at 32. The RO is obligated by law to issue an SOC only after a *timely* NOD is filed. *See* 38 U.S.C. § 7105(d)(1) ("Where the claimant, or the claimant's representative, within the time specified . . . , files a[n NOD] . . . such agency will take such development or review action as it deems proper . . . . If such action does not resolve the disagreement . . . , such agency shall prepare a[n SOC].");
*Acosta v. Principi*, 18 Vet.App. 53, 56 (2004); 38 C.F.R. § 19.26 (2005). It must therefore be presumed that the RO issued the SOC in this case only after it had made a determination that the NOD was either received or postmarked within the one-year appeal period.

The SOC indicates that the NOD was received by the RO on April 19, 1995, which is more than one year after the April 4, 1994, mailing of the RO decision denying the appellant's service-connection claims. Because the NOD was not received within the one-year appeal period, the RO presumably would not have issued the SOC on the underlying merits of the claims unless it had been able to determine that the NOD was postmarked prior to the expiration of the one-year appeal period.

On the other hand, if the NOD was not postmarked within the one-year appeal period, the

8

RO presumably would not have issued the SOC on the merits of the claims. Alternatively, if the postmark was illegible or unavailable, the RO would have applied 38 C.F.R. § 20.305 to conclude that the NOD was presumed to have been postmarked on April 12, 1995, five business days prior to April 19, 1995, the date on which the NOD was date-stamped received by the RO. Because this date is more than one year after the April 4, 1995, mailing of the notice of the RO decision to the appellant, the NOD would have been untimely. Under either scenario, the RO would have followed the regular administrative procedure when an NOD is untimely: the RO would have informed the appellant that the NOD was untimely and notified him that he could appeal the timeliness decision. If the appellant had protested the determination that the NOD was untimely, the RO would have issued an SOC on the issue of the timeliness of the appeal. *See* 38 C.F.R. §§ 19.33, 19.34, 19.50-.52 (2005) (RO procedure when it questions timeliness of NOD is to follow administrative appeal procedure). However, the RO did not question the timeliness of the appellant's NOD and, in fact, no jurisdictional defect was noted by the RO. Because the RO did not treat the NOD as untimely, but instead issued the SOC, it is presumed that the SOC was issued in accordance with relevant law and regulation.

Having concluded that the presumption of regularity attaches to the RO's issuance of the SOC, the Secretary bears the burden of proving, by clear evidence, that the appellant's NOD was not timely filed. *See Piano v. Brown*, 5 Vet.App. 25, 27 (1993) (holding that clear evidence is required to rebut the presumption of regularity); *Ashley, supra*. To meet this burden, the Secretary must provide clear evidence that the appellant's NOD was not postmarked within the one-year appeal period. *Cf. Fluker v. Brown*, 5 Vet.App. 296, 298 (1993) (holding that the BVA's use of an incorrect address in mailing a copy of a Board decision constituted clear evidence to rebut the presumption of regularity).

The question of what constitutes "clear evidence" needed to rebut the presumption of regularity and whether the Secretary met his burden to establish that the NOD was not postmarked within the one-year appeal period are questions of law, which this Court reviews de novo. *Crain*, 17 Vet.App. at 189. As such, the Court is required to make an independent determination of whether the record contains clear evidence of sufficient weight to rebut the presumption of regularity and whether the Secretary has presented evidence showing that the NOD was not

9

postmarked within the one-year appeal period. *Id.; see also Woods*, 14 Vet.App. at 220-21 (concluding that presumption as applied to Secretary's mailing of RO notice of decision to veteran was rebutted and Secretary failed to meet his burden); *Piano*, 5 Vet.App. at 26-27 (holding that, after the presumption of regularity of mailing was rebutted, Secretary did not meet his burden of establishing that BVA decision was mailed to veteran as required by section 7104(e)).

Here, there is no clear evidence in the record that indicates that the appellant's NOD was not postmarked within the one-year appeal period. The Board specifically found that the postmark was not in the claims file. Moreover, the only evidence that tends to indicate the date on which the NOD was postmarked is the affidavit of the appellant's attorney's secretary attesting that the NOD was dated April 3, 1994, and that "[i]n the normal course of business, all mail is delivered to the Post Office on a daily basis making the date of any letter the date on which the letter would be postmarked." *Id.* Finally, the Board stated that "there is no indication that there is any outstanding, existing evidence needed to fairly adjudicate the claim on appeal that has not been obtained" and concluded that the record was fully developed on the timeliness issue. R. at 4-5. Accordingly, on this record there is no clear evidence to rebut the presumption of regularity.

There is also no reason to remand this matter for the Board to determine in the first instance whether the Secretary has sustained his burden to rebut the presumption of regularity. *See Maggitt v. West,* 202 F.3d 1370, 1377 (Fed. Cir. 2000) (Court can address issues not decided below); *see also Crain*, 17 Vet.App. at 194 (holding that, given that the presumption of regularity of mailing was rebutted, the Court was better situated than the Board to determine whether the Secretary had sustained his burden to establish that it had mailed an SOC to the veteran); *Vanerson v. West*, 12 Vet.App. 254, 261 (1999) (noting that "typical parley of 'basic facts' and 'counterproof' involved with presumptions in an adversarial proceeding does not fit the VA adjudication system where the very adjudicator, who is charged with assisting in the development of the claim, would also bear the burden of rebutting the presumption").

## IV. CONCLUSION

Because the presumption of regularity attached to the RO's action of issuing the SOC, which the Secretary presumably would have done only if the NOD had been timely filed, and

10

because the Secretary has not sustained the burden in rebutting the presumption of regularity, the Court REVERSES the August 23, 2002, Board decision that determined that the appellant's NOD was not timely filed and REMANDS the matter for expeditious further development and issuance of a decision on the appellant's service-connection claims.

REVERSED AND REMANDED.